# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **MICKEY LANE HAMMOCK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:14-cv-00853** |
| **v.** | ) | **Judge Campbell / Knowles** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 16. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 17.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed his applications for DIB and SSI on September 8, 2010, alleging that he had

been disabled since December 28, 2005, due to a "bulged disc" in his back, depression, high

blood pressure, and anxiety. Docket No. 11, Attachment ("TR"), TR 131-34, 135-39, 151.

Plaintiff's applications were denied both initially (TR 48, 49) and upon reconsideration (TR 50,

51). Plaintiff subsequently requested (TR 73-74) and received (TR 24-47) a hearing. Plaintiff's

hearing was conducted on October 16, 2012, by Administrative Law Judge ("ALJ") Scott

Shimer. TR 24-47. Plaintiff and vocational expert ("VE"), Kenneth Anchor, appeared and

testified. *Id.*

On November 2, 2012, the ALJ issued a decision unfavorable to Plaintiff, finding that

Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 9-

18. Specifically, the ALJ made the following findings of fact:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since December 28, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: degenerative disc disease, hypertension, major depressive disorder, generalized anxiety disorder and alcohol abuse in full sustained remission (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except standing and

walking for four out of eight hours total in an eight hour workday; sit for six out of eight hours; occasional balancing, stooping, kneeling, crouching and climbing; occasionally climbing ramps, stairs and ladders, ropes and scaffolding; would need a job that involves simple, routine, repetitive tasks; would need a job that involves gradual and infrequent workplace changes; and would be able to tolerate frequent contact with the general public and with co-workers.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on July 7, 1971 and was 34 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from December 28, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 11-18.

On December 18, 2012, Plaintiff timely filed a request for review of the hearing decision.

TR 128-30.  On January 29, 2014, the Appeals Council issued a letter declining to review the case (TR 1-5), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction.  42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive.  *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.  *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consol. Edison Co. v.*

*N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980)).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he

or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step

sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175,

1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by

relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred by failing to properly: (1) accord sufficient weight to the opinion of his treating physician, Dr. Bien Samson; (2) consider all of his impairments and provide sufficient reasons for not finding impairments to be "severe"; and (3) include a function-by-function assessment in his RFC assessment. Docket No. 16-1. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security,

with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1. Opinion of Dr. Bien Samson, Plaintiff's Treating Physician

Plaintiff argues that the ALJ failed to properly evaluate and accord sufficient weight to the opinion of his treating physician, Dr. Bien Samson. Docket No. 16-1 at 6-7. Specifically, Plaintiff argues that the ALJ improperly characterized a July 11, 2012, letter drafted by Dr. Samson, and signed by both himself and FNP Dana Henderson, as "not [being] from an acceptable medical source," and discounting it as such. *Id.* Plaintiff notes that he had been a patient at Dr. Samson's clinic for more than five years at the time Dr. Samson drafted the letter. *Id.* In that letter, Dr. Samson opined that Plaintiff would be unable to sustain gainful employment due to his chronic back pain and radiating right leg pain. *Id.* at 6 (*citing* TR 366).[2]

Plaintiff notes that the ALJ, in his decision, referred to this letter "as being from FNP

---

[2] Plaintiff cites in his brief to "R. 366." The letter referenced, however, is on page 367 of the record. This appears to be a typographical error, and the Court construes it as such.

Dana Henderson" and stated that "'the opinion is not from an acceptable medical source.'" *Id.*

(*citing* TR 16-17). Plaintiff contends that, in failing to recognize that the letter was written and

signed by his treating physician, and failing to evaluate it as an opinion from an acceptable

medical source, the ALJ did not comply with the requirements of SSR 96-2p.[3] *Id.*

Plaintiff also contends that the ALJ provided insufficient reasons for assigning "'little

weight'" to the opinion referred to as "Nurse Henderson's opinion," because the ALJ's proffered

rationale incorrectly stated that Nurse Henderson had based her opinion on Plaintiff's subjective

complaints and not clinical findings. *Id.* (*referencing* TR 16). Plaintiff notes that, although the

letter does mention his subjective complaints, "it also cites to numerous objective findings

including an MRI of the lumbar spine." *Id.* at 6-7. Plaintiff further asserts that "a medical

provider should not be penalized for considering a patient's subjective complaints in conjunction

with objective evidence." *Id.* at 7.

Plaintiff additionally argues that the ALJ erred by "inappropriately deferring to the

opinions of non-treating and even non-examining physicians over the opinion of treating

physician, Dr. Samson" in determining Plaintiff's RFC limitations. *Id.* Plaintiff emphasizes that

SSR 96-2p provides, "If a treating source's medical opinion is well-supported and not

inconsistent with the other substantial evidence in the case record, it must be given controlling

weight; i.e., it must be adopted." *Id.* at 7-8. Plaintiff contends that, because Dr. Samson "cited

numerous objective findings in support of his opinion in the letter" and substantial evidence

_____

[3] Plaintiff stated in his brief, "Since the ALJ did not evaluate the opinion as being from an acceptable medical source, he erred *by complying* with the requirements of SSR 96-2p." This appears to be a typographical error, and the Court construes Plaintiff's argument to be that the ALJ erred by *not* complying with the requirements of SSR 96-2p.

supports his opinion, the ALJ erred by not giving controlling weight to Dr. Samson's opinion. *Id.* at 10.

In the alternative, Plaintiff argues that Dr. Samson's opinion should "at the very least" be given more weight than a non-examining state agency medical consultant. *Id.* at 9. Plaintiff maintains that although the ALJ stated that he gave "'less weight'" to the opinion of the consultative examiner and state agency medical consultants, "he still gave more weight to their opinions than he did to treating physician, Dr. Samson." *Id.*, *referencing* TR 16. Plaintiff reiterates that "it is unjustifiable for the ALJ to ignore Dr. Samson's opinion and assign more weight to the opinion of two non-examining medical consultants who have not examined the Plaintiff at any point." *Id.* at 10. Plaintiff contends that the ALJ's analysis "should be called into question" because he "provided no sufficient reasons for more closely scrutinizing the opinions of treating physicians and examining physicians" than non-treating physicians.[4] *Id.* Plaintiff concludes that, because the ALJ failed to provide the required "'good reasons'" for rejecting the limitations assigned by Dr. Samson, his decision is flawed and cannot stand. *Id.*

Defendant responds that the ALJ "properly evaluated the statement of [Nurse] Henderson and Dr. Samson." Docket No. 17 at 11 (*referencing* TR 16-17). Defendant maintains that although Plaintiff is correct that the ALJ failed to mention that the letter was also signed by Dr. Samson, remand on this issue is not warranted because the ALJ "properly noted the statement was a conclusion on an issue reserved to the Commissioner." *Id.* at 11-12. With regard to Plaintiff's argument that the ALJ erred by not granting the statement controlling weight,

---

[4] Plaintiff stated in his brief, "The ALJ provided no sufficient reasons for more closely scrutinizing the opinions of treating physicians and examining physicians than he did treating physician opinions." This appears to be a typographical error, and the Court construes it as such.

Defendant asserts that "an opinion that an individual is 'disabled' is not entitled to special significance, as disability determinations are 'the prerogative of the Commissioner.'" *Id.* Defendant further asserts that opinions on matters reserved to the Commissioner are not "'medical opinions'" as defined in the regulations. *Id.* Defendant contends, therefore, that because the opinion rendered was one regarding disability, it is irrelevant whether the statement was provided by a physician or a nurse practitioner. *Id.*

Defendant additionally responds that the ALJ "properly found the statement inconsistent with the objective evidence" and "based on Plaintiff's subjective allegations." *Id.*, *referencing* TR 16. Defendant points out that Plaintiff's treatment notes from the Hope Family Health Services showed "no significant abnormalities" and that Plaintiff's hand injury sustained while working on his car was inconsistent with the statement that Plaintiff could perform no work activity. *Id.* (*referencing* TR 12, 14, 16, 198-202, 282-96, 349-60, 373, 379). Defendant notes that an ALJ may properly accord a treating physician's opinion less weight when it is primarily based on subjective complaints, and argues that, here, the ALJ properly evaluated Plaintiff's credibility and determined that his allegations of disability were not fully credible. *Id.* at 12-13 (*referencing* TR 11-17). Defendant reiterates that the ALJ properly accorded the statement "little weight" because it was an opinion rendered on an issue reserved to the Commissioner; it was inconsistent with the objective findings; and it was based on Plaintiff's subjective allegations. *Id.* at 13 (*referencing* TR 16-17).

In response to Plaintiff's argument that the ALJ failed to apply as much scrutiny to the other medical opinions as he did to that of Nurse Henderson and Dr. Samson, Defendant points out that the ALJ accepted the most restrictive limitations from each doctor. *Id.*, (*referencing* TR

13, 252, 333, 329). Defendant further contends that the ALJ's determination that Plaintiff could

perform only sedentary work demonstrated that he "necessarily" scrutinized the medical opinions

in the record. *Id.* Defendant explains that had the ALJ not scrutinized the medical opinions, he

"would have found that Plaintiff did not have a severe impairment and could perform a range of

light work." *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations

states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. . . .
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the

more weight we will give that opinion. . . .

       (4) Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

       (5) Specialization.  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

   . . .

20 C.F.R. § 416.927(d) (emphasis added).  *See also* 20 C.F.R. § 404.1527(d).

     The ALJ must articulate the reasons underlying his decision to give a medical opinion a specific amount of weight.[5]  *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight.  SSR 96-2p.

     The Sixth Circuit has held that, "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997).  The Sixth Circuit has also held that, "provided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are

---

[5] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record.  *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. April 28, 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

uncontradicted, complete deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002)(*quoting Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

The ALJ is not bound by a treating physician's statement that a claimant is "disabled." *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). The Regulations provide:

> (d) *Medical source opinions on issues reserved to the Commissioner.* Opinions on some issues, such as the examples that follow, are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner . . .
>
> (1) *Opinions that you are disabled.* We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.
>           . . .
>
> (3) We will not give any special significance to the source of an opinion on issues reserved to the Commissioner . . .

20 C.F.R. § 404.1527(d)(1)-(3).

Although nurse practitioners are "other sources" who are not "acceptable medical sources" as defined by the SSA, the Regulations provide that the ALJ may nevertheless properly:

use evidence from other sources to show the severity of your
impairment(s) and how it affects your ability to work.  Other
sources include, but are not limited to -

(1) Medical Sources not listed in paragraph (a) of this
section (for example, *nurse-practitioners*, physicians' assistants,
naturopaths, chiropractors, audiologists, and therapists).

20 C.F.R. § 404.1513(d) (emphasis added).

When considering "other source" opinions, the ALJ's decision should:

. . . reflect the consideration of [these] opinions . . . Although there
is a distinction between what an adjudicator must consider and
what the adjudicator must explain in the disability determination or
decision, the adjudicator generally should explain the weight given
to opinions from these "other sources,"  . . .  when such opinions
may have an effect on the outcome of the case.

SSR 06-03p.

In the case at bar, the ALJ discussed the letter at issue and the weight accorded thereto as

follows:

The undersigned also considered the narrative statement signed by
the claimant's medical provider Dana Henderson, FNP, at Hope
Family Health Services dated July 11, 2012.  Nurse Henderson
indicated that the claimant "is unable to perform work of any type,
and considering his conditions, he will not be able to work in the
future" (Ex. 21F).  As previously discussed, the medical evidence
does not lead to the conclusion of totally disabling limitations.
Medical imaging showed no more than mild findings, and recent
treatment notes from Hope Family Health Services illustrate no
musculoskeletal abnormalities on examination (Ex. 20F).  While
Nurse Henderson indicated that the claimant is unable to perform
work of any type, emergency room records show that the claimant
was seen in the emergency room in March 2011 after hitting his
hand on the engine of a car he was working on.  This activity is
certainly not consistent with the inability to perform any type of
work.  In addition, it appears that Nurse Henderson based her
opinion on the claimant's subjective complaints and not clinical
findings. For example, Nurse Henderson indicated that the

claimant "states his right leg pain is worsening..." "He states he never feels good." "Mr. Hammock states his good days are a [five] and he only has [two] good days out of [seven]...this clearly indicates he is unable to perform job duties, especially on a 40 hour/week basis." In addition, this opinion is not from an acceptable medical source. Lastly, it is not so much an opinion as it is a conclusion that the claimant is unable to work. This is an issue reserved to the commissioner. For these reasons, Nurse Henderson's opinion is given little weight.

TR 16-17 (*citing* TR 367, 347-66).

While Plaintiff is correct that the ALJ did not explicitly mention that the letter contained the signatures of both Nurse Henderson and Dr. Samson, as will be discussed in greater detail below, this does not warrant reversal because: (1) the record indicates that Nurse Henderson, rather than Dr. Samson, provided the majority, if not all, of Plaintiff's treatment at Hope Family Health Services; (2) the opinion was unsupported by the evidence of record; and (3) opinions regarding disability are not required to be accorded weight as the issue of disability is one reserved for the Commissioner.

Contrary to Plaintiff's argument that Dr. Samson was his treating physician whose opinion was therefore entitled to controlling weight, the record indicates that Nurse Henderson was Plaintiff's treating health care provider at Hope Family Health Services. Plaintiff testified that Nurse Henderson had treated him "going on four years" and prescribed his medications. TR 36, 39-40. He also referred to her as his doctor more than once during his hearing. TR 33, 36. As discussed above, Nurse Henderson is a nurse practitioner who is considered an "other source," not an "acceptable medical source" as defined by the SSA, and whose opinion should be considered but is not automatically due great or controlling weight. When questioned about Dr. Samson specifically, Plaintiff testified that he was the lay doctor at Hope Family Health Services

and that he had seen him one time "a year-and-a-half ago" to have a potentially cancerous knot removed from his right chest. TR 36. As a physician who examined Plaintiff only once, Dr. Samson's opinion is not entitled to any special deference. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (holding that two physicians who had each seen the claimant on just one occasion for treatment purposes were not "treating physicians").

Although Plaintiff argues that "Dr. Bien Samson clearly drafted . . . the letter" that was signed by both Nurse Henderson and Dr. Samson, there is no evidence in the record supporting this argument and Plaintiff produces no evidence to so demonstrate. As discussed, Nurse Henderson was Plaintiff's treating source and her signature is on the opinion. The opinion of an "other" source does not become that of an "acceptable" medical source merely because an "acceptable" medical source, such as a doctor, cosigns a document with an "other" source when the evidence shows that only the "other" source actually provided treatment. *Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 398 (6th Cir. 2014).

Moreover, as can be seen in the quoted passage above, the ALJ specifically discussed the letter, articulated the weight accorded to the opinion set forth in the letter, and explained his rationale for the weight he accorded thereto. Contrary to Plaintiff's claims that the ALJ "provided insufficient reasons for assigning 'little weight' to the opinion referred to as 'Nurse Henderson's opinion'" and "failed to provide the required 'good reasons' for rejecting the limitations assigned by Dr. Samson," as the quoted passage indicates, the ALJ specifically articulated inconsistencies between the opinion and the record as a whole. TR 16 (*referencing* TR 347-66). As the ALJ explained, the medical evidence did not support the letter's conclusion of "totally disabling limitations." *Id.*

Finally, the ultimate determination of Plaintiff's ability to work is an issue reserved to the Commissioner; thus, an opinion stating that a claimant is unable to work (regardless of whether an "other source" or "acceptable medical source" rendered the opinion) is not binding. *See* 20 C.F.R. § 404.1527(d)(1)-(3); *King*, 742 F.2d at 973 (finding that because the definition of disability requires consideration of both medical and vocational factors, the Secretary cannot be bound by a treating physician's statement that a claimant is 'disabled'). Accordingly, regardless of whether the opinion that Plaintiff would be unable to work, set forth in the letter, was rendered by Nurse Henderson or by Dr. Samson, neither opinion would be entitled to controlling weight in this case. Because the ALJ: (1) considered the evidence in its entirety, including the letter at issue; (2) articulated the weight accorded to that opinion and explained the reasons therefor; and (3) the opinion expressed in the letter was on an issue reserved for the Commissioner, Plaintiff's contention on this point fails.

## 2. Consideration of Plaintiff's "Severe" Impairments

Plaintiff argues that the ALJ failed to properly consider all of his severe impairments. Docket No. 16-1 at 10. Specifically, Plaintiff contends that the ALJ failed to properly consider Plaintiff's insomnia, lumbago, and GERD, and failed to provide sufficient reasons for not finding these impairments to be "severe." *Id.* at 11. Plaintiff asserts that he has been diagnosed with the impairments noted above; that his diagnoses are well-documented in the record; and that these impairments "cause more than a slight abnormality on [his] ability to function," such that the ALJ should have found them to be "severe." *Id.*

Defendant responds that while Plaintiff has been diagnosed with insomnia, lumbago, and GERD, those impairments do not cause "more than a slight abnormality on his ability to

function." Docket No. 17 at 5. Defendant further responds that when an ALJ finds at least one impairment to be severe, "the 'failure to find additional severe impairments...does not constitute reversible error.'" *Id.* at 6 (*citing Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013)). Defendant also contends that, despite arguing that these impairments impose work-related limitations on him, Plaintiff does not identify the limitations or allege any additional limitations that the ALJ should have included in his RFC assessment. *Id.*

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR § 404.1520(c). An impairment or combination of impairments is "severe" within the meaning of the Regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities; conversely, an impairment is not "severe" if it does not significantly limit a claimant's physical or mental ability to do basic work activities. *Id.*; 20 CFR §§ 404.1521(a), 416.920(c), 416.921(a). The Sixth Circuit has described the severity determination as "a de minimis hurdle" in the disability determination process, the goal of which is to screen out groundless claims. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). Where the ALJ finds that the claimant has at least one severe impairment and proceeds to complete the sequential evaluation process, however, the ALJ's failure to find that another condition is a severe impairment cannot constitute reversible error. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

The ALJ in the instant action found that Plaintiff has the following severe impairments: degenerative disc disease, hypertension, major depressive disorder, generalized anxiety disorder,

and alcohol abuse in full sustained remission. TR 11. Because the ALJ specifically found that Plaintiff had at least one severe impairment and completed the sequential evaluation process, the ALJ's alleged failure to find Plaintiff's insomnia, lumbago, and GERD to be "severe" cannot constitute grounds for reversal. *See Maziarz*, 837 F.2d at 244. Accordingly, Plaintiff cannot prevail on this ground.

### 3. Function-By-Function Assessment Required by SSR 96-8p

Plaintiff maintains that the ALJ erred by failing to include a function-by-function assessment in the Residual Functional Capacity ("RFC") determination as required by SSR 96-8p. Docket No. 16-1 at 11-12. Specifically, Plaintiff argues that the ALJ failed to separately consider each of the seven strength demands of sitting, standing, walking, lifting, carrying, pushing, and pulling. *Id.* Plaintiff further argues that the ALJ failed to "provide limitations regarding the Plaintiff's seizure disorder." *Id.* at 12.

Defendant responds that the ALJ's RFC finding and analysis were proper. Docket No. 17 at 5-6. Specifically, Defendant argues that, "'[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing,' as there is a difference 'between what an ALJ must consider and what an ALJ must discuss in a written opinion.'" *Id.* (internal citations and quotations marks omitted). Defendant further responds that, "'SSR 96-8p clearly states that the ALJ must consider each function separately; it does not state that the ALJ must discuss each function separately in the narrative of the ALJ's decision,'" and that the Sixth Circuit does not require a step-by-step narrative of a claimant's functional limitations. *Id.*, *quoting Adams v. Comm'r of Soc. Sec.*, No. 4:13-cv-22, 2014 WL 3368692, at *11 (E.D. Tenn., July 9, 2014); *citing Delgado*, 30 F. App'x at 547-48.

Defendant additionally argues that, "while SSR 96-8p requires a function-by-function evaluation to determine a claimant's RFC, 'case law does not require the ALJ to discuss those capacities for which no limitation is alleged.'" *Id.* at 6 (*quoting Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (internal citations and quotation marks omitted)). Defendant contends that the ALJ properly incorporated all credible limitations into the RFC finding. *Id.* at 6. Defendant maintains that the ALJ appropriately considered the record as a whole, including Plaintiff's subjective complaints, and determined that Plaintiff's allegations regarding his limitations were not completely credible as they were inconsistent with the record. *Id.* In particular, Defendant argues that the ALJ properly: (1) considered Plaintiff's medical records and found that Plaintiff's impairments had improved with treatment and did not support his allegations of disability; (2) considered the medical evidence and found it inconsistent with Plaintiff's allegations; and (3) considered the opinions in the record and incorporated the credible limitations into the RFC finding. *Id.* at 7-11. Defendant also contends that "credibility determinations rest with the ALJ, and '[a]s long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess.'" *Id.* at 7 (*quoting Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713-14 (6th Cir. 2012)).

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and

continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b).

In the case at bar, after evaluating all of the objective and testimonial evidence of record and Plaintiff's reported level of activity, the ALJ determined that Plaintiff retained the RFC for a range of sedentary work with additional limitations. TR 13-17. Specifically, the ALJ found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except standing and walking for four out of eight hours total in an eight hour workday; sit for six out of eight hours; occasional balancing, stooping, kneeling, crouching and climbing; occasionally climbing ramps, stairs and ladders, ropes and scaffolding; would need a job that involves simple, routine, repetitive tasks; would need a job that involves gradual and infrequent workplace changes; and would be able to tolerate frequent contact with the general public and with co-workers.

TR 13.

Although Plaintiff argues that an ALJ commits reversible error if the ALJ does not explicitly conduct a function-by-function assessment that discusses each function separately, the law in the Sixth Circuit has not so held. "Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing," as there is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Beason v. Comm'r of Soc. Sec.*, No. 1:13-CV-192, 2014 WL 4063380, at *13 (E.D. Tenn. Aug. 15, 2014) (*quoting Delgado*, 30 F. App'x at 547-48). Significantly, SSR 96–8p

states that the ALJ must *consider* each function separately; it does not state that the ALJ must *discuss* each function separately in the narrative of the decision.

As can be seen in the quoted passage above, the ALJ specifically included in his RFC determination the following functional limitations: (1) Plaintiff can stand and walk for four out of eight hours total in an eight hour workday; (2) Plaintiff can sit for six out of eight hours; (3) Plaintiff can occasionally balance, stoop, kneel, crouch, and climb; (4) Plaintiff can occasionally climb ramps, stairs, ladders, ropes, and scaffolding; (5) Plaintiff needs a job that involves simple, routine, repetitive tasks; (6) Plaintiff needs a job that involves gradual and infrequent workplace changes; and (7) Plaintiff is able to tolerate frequent contact with the general public and with co-workers. *Id.* Additionally, the ALJ's decision narrative addresses the evidence and resulting functional limitations. *See* TR 11-18. Not only did the ALJ in the case at bar explicitly state that he had considered the entire record carefully, but as has been demonstrated in the statements of error above, the ALJ's articulated rationale throughout his decision so evidences. The ALJ properly evaluated the evidence and complied with SSR 96-8p in making his RFC determination, and the Regulations do not require more.

Plaintiff also contends that the ALJ failed to "provide limitations regarding [his] seizure disorder" in the RFC assessment. *Id.* at 12. As an initial matter, the ALJ did not find that Plaintiff's "seizure disorder" was a severe impairment that caused more than a minimal impact on his ability to perform work related activities. Additionally, Plaintiff fails to identify any limitations resulting from his alleged "seizure disorder" that the ALJ omitted. As demonstrated in the discussion of the statements of error above, the ALJ properly evaluated the evidence and incorporated the restrictions he felt were consistent with, and supported by, the evidence of

record.

The ALJ's RFC determination was reached in accordance with the Regulations and supported by the evidence of record.  Thus, the ALJ's RFC determination was proper and Plaintiff's argument on this point fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge